**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHAINA ANDREWS, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | |
| vs. | No. 15 cv 1308 |
| WALGREEN CO., | |
| Defendant. | DEMAND FOR JURY TRIAL |

**CLASS ACTION COMPLAINT FOR
EQUITABLE, DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Shaina Andrews ("Plaintiff") alleges the following based upon personal knowledge as to herself and her own acts, and upon information and belief and the investigation by Plaintiff's counsel, which included, among other things, a review of public documents, marketing materials, and announcements made by Walgreen Co. ("Defendant" or "Walgreens"), as to all other matters. Plaintiff believes that substantial additional evidentiary support exists for the allegations set forth herein and will be available after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.     This action seeks to remedy the misleading and deceptive business practices of Defendant with respect to the marketing, advertising, labeling, and sale of Walgreens Finest Nutrition Echinacea (the "Misbranded Walgreens Finest Nutrition Echinacea Product" or the "Product").

2.     Since as early as 2009 through the present ("Class Period"), Defendant has manufactured, distributed, and sold the Product and has uniformly and prominently marketed, advertised, and labeled the Product as a dietary supplement containing the primary labeled ingredient Echinacea.

3.     Defendant's labeling, advertising, and marketing campaign is false and misleading because Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product in fact does not contain the primary labeled ingredient Echinacea.   Moreover, the Product contains other ingredients that are not identified on the label.

4.     Indeed, the Attorney General for the State of New York has served upon Defendant a Cease and Desist Notification demanding that Defendant immediately stop the sale of Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product, among other specified dietary supplement products.

5.     Plaintiff relied on Defendant's representation that the Misbranded Walgreens Finest Nutrition Echinacea Product was what it was purported to be: an herbal dietary supplement containing Echinacea.   Plaintiff did not purchase the Product with the intent not to receive the represented herbal dietary supplement.

6.     Consumers purchase Echinacea, such as Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product, for its purported health-related benefits – that is, as a dietary herbal supplement that aids the immune system and reduces cold and flu symptoms.   Where Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product does not contain Echinacea it does not and cannot provide the intended health-related benefit.

7.     Defendant's failure to identify all the ingredients on the label of the Product also exposes consumers with food allergies, or who are taking medication for an unrelated illness, to potentially serious health risk every time the consumer ingests the contaminated herbal dietary supplement, such as Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product.

8.     Plaintiff and the Classes were injured as they did not get what they paid for. Plaintiff and the Classes did not receive a dietary supplement that contains Echinacea having specified immune-related attributes; rather, they received a product that does not contain Echinacea and contains other ingredients not identified on the label, in contradiction to Defendant's representations.   Plaintiff would not have purchased the Product had she known the truth.   Plaintiff and the Classes suffered an injury in that the Product they purchased is, in fact,

worthless as a product because it is misbranded and unable to provide the intended health-related benefit, as promised.

9.     Defendant's conduct of falsely marketing, advertising, labeling, and selling the Product as containing Echinacea, which it did not have, (a) constitutes misleading and deceptive conduct; (b) is likely to mislead members of the public; and (c) is substantially injurious to consumers. As such, Plaintiff seeks relief in this action individually and as a class action on behalf of all purchasers in the United States of the Product (the "Class"). Plaintiff also seeks relief in this action individually and as a class action on behalf of a subclass of all purchasers in New York of the Product (the "New York Class").

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction over the claims asserted herein individually and on behalf of the class pursuant to 28 U.S.C. §1332, as amended in February 2005 by the Class Action Fairness Act. Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed classes are citizens of a state different from that of Defendant. Personal jurisdiction is proper as Defendant has purposefully availed itself of the privilege of conducting business activities within this District.

11.     Defendant, a citizen of Illinois, has distributed, marketed, advertised, labeled, and sold the Product, which is the subject of the present complaint, in this District. Defendant's address is 108 Wilmot Road, Deerfield, IL 60015. Thus, under 28 U.S.C. §§1391(c)(2) and (d), Defendant is deemed to reside in this District. As such, venue is proper in this judicial district under 28 U.S.C. §1391(b)(1) because Defendant is deemed to reside in this District and under 28 U.S.C. §1391(b)(2) because Defendant conducts business in this District and a substantial part of the acts or omissions giving rise to the claims set forth herein occurred in this District.

## PARTIES

12.     Plaintiff Shaina Andrews is a citizen of New York and an individual consumer. During the Class Period, Plaintiff purchased Defendant's Misbranded Walgreens Finest Nutrition

Echinacea Product at a Walgreens store in Manhattan. Prior to purchasing the Product, Plaintiff read and relied upon false and misleading statements that were prepared by and/or approved by Defendant and its agents and disseminated through the packaging of the Product. At the time of purchase, Plaintiff believed that she was paying for a dietary supplement containing Echinacea and was deceived when she received a product that did not contain Echinacea. But for Defendant's misrepresentations, Plaintiff would not have purchased the Product. Plaintiff thus was damaged by Defendant's practice.

13. Defendant is an Illinois corporation with its headquarters located at 108 Wilmot Road, Deerfield, Illinois, 60015. Defendant distributes, markets, advertises, and sells the Product throughout the United States. Walgreens, together with its subsidiaries, operates a network of drugstores in the United States. It provides consumer goods and services, pharmacy, and health and wellness services through its drugstores, as well as through mail, and by telephone and online. The company sells prescription and non-prescription drugs, and general merchandise, including herbal supplements. As of October 20, 2014, it operated 8,207 locations in 50 states, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands.

## ALLEGATIONS OF FACT

### A. Defendant's False and Misleading Statements

14. Defendant manufactures, distributes, and sells its private label dietary supplements, branded under the name Finest Nutrition, nationwide. Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product is uniformly and prominently marketed, advertised, and labeled as a dietary supplement containing the primary labeled ingredient Echinacea. Defendant also represents in the nutrition panel on the label of the Product that the Product contains only the ingredients listed and no others.

15. Consumers purchase Echinacea such as Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product, for its purported health-related benefits – that is, as a dietary supplement that aids the immune system and reduces cold and flu symptoms.

16.     Where Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product does not contain Echinacea, it does not and cannot provide the intended health-related benefit.

**B.      The Product Does Not Contain the Labeled Ingredient Echinacea and Contains Other Ingredients Not Identified on the Label**

17.     Defendant's labeling, advertising, and marketing campaign is false and misleading because the Product does not contain the primary labeled ingredient, Echinacea.  Moreover, the Product contains other ingredients that are not identified on the label.

18.     On February 2, 2015, the Attorney General of the State of New York sent Walgreens' President a cease and desist letter demanding that Walgreens stop selling adulterated and mislabeled herbal supplements.  Walgreens was notified that "six popular Walgreens 'Finest Nutrition' brand dietary supplement products were purchased at three different New York State locations and were then genetically tested five times per sample, yielding 90 results."  Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product is one of the dietary supplements identified by the New York Attorney General as adulterated and misbranded.  A copy of the Cease and Desist Notification is attached hereto as Exhibit A.

19.     With regard to Defendant's Misbranded Walgreens Finest Nutrition Echinacea Product, the New York Attorney General concluded that Walgreens Finest Nutrition Echinacea tested "[n]egative" for containing the labeled ingredient Echinacea because "[n]o DNA from Echinacea was identified."  Walgreens was further informed that "[t]he testing revealed 5-positive identification of allium, 5-positive findings of oryza, and one for DNA material originating in the daisy family" – none of which are disclosed as ingredients on the label.

20.     The New York Attorney General's findings support what consumer advocacy groups have been saying for years about herbal supplements such as Finest Nutrition – major retailers like Walgreens are "not providing the public with authentic products without substitution, contamination or fillers."  *See* Exhibit A at 2.

21.     The New York Attorney General's testing is consistent with the results of prior research on whether herbal dietary supplements actually contain the primary labeled ingredients. A November 3, 2013 New York Times article reported:

> DNA tests show that many pills labeled as healing herbs are little more than powdered rice and weeds. Using a test called DNA barcoding, a kind of genetic fingerprinting that has also been used to help uncover labeling fraud in the commercial seafood industry, Canadian researchers tested 44 bottles of popular supplements sold by 12 companies. They found that many were not what they claimed to be, and that pills labeled as popular herbs were often diluted – or replaced entirely – by cheap fillers like soybean, wheat and rice.
>
> Consumer advocates and scientists say the research provides more evidence that the herbal supplement industry is riddled with questionable practices.

Anahad O'Connor, *Herbal Supplements Are Often Not What They Seem*, THE NEW YORK TIMES, Nov. 3, 2013 (available at: http://www.nytimes.com/2013/11/05/science/herbal-supplements-are-often-not-what-they-seem.html?pagewanted=all&_r=0 (last accessed February 11, 2015)).

22.     Throughout the Class Period, Defendant engaged in, and Plaintiff and members of the Classes were exposed to, a uniform message displayed on the label of the Product. This message, ***at a minimum***, is conveyed at the point of purchase on the packaging and labeling of the Product. Thus, all consumers are exposed to the same message on the label.

23.     Plaintiff and the Classes reasonably understood the packaging of the Product to mean that the Product is an herbal dietary supplement that contains the labeled ingredient Echinacea, having specified health-related attributes, and does not contain other ingredients not identified on the label. Plaintiff and the Classes relied on such representations in making their purchases of the Product.

**C.     Consumers Desire Accurately Labeled Products**

24.     As more and more consumers realize the value of good health, interest in herbal dietary supplements has risen. Consumers are increasingly looking for alternative remedies to cure what ails them and to help them stay healthy well into their later years. Heightened consumer awareness regarding preventative healthcare and an aging population has fueled a thriving consumer market in herbal dietary supplements.

6

25.    Americans spend an estimated $6 billion a year[1] on herbal dietary supplements that promise a spectrum of health-related benefits, from fighting off colds to boosting memory.

26.    As American consumers look for products that help them maintain a healthy lifestyle, product package labels are vehicles that convey quality, nutrition, and ingredient information to consumers that they can and do use to make purchasing decisions.

27.    Defendant realizes that consumers are increasingly interested in herbal dietary supplements.  Indeed, Defendant "with its subsidiaries operates the largest drugstore chain in the United States with net sales of $76.4 billion" and its business is to sell "health and wellness services in communities across America."  *See* Walgreen Co. Form 10-K for FY ended Aug. 31, 2014 (available at http://www.sec.gov/Archives/edgar/data/104207/ 000010420714000104/form10k08312014.htm (last accessed February 11, 2015)).  Thus, Defendant unquestionably understands the importance and value of descriptors and labels that convey to consumers that a product contains the labeled ingredients and thus has certain attributes and benefits associated with it.

28.    A reasonable consumer understands that a product contains the labeled ingredients, and conversely, should not contain any other ingredients not identified on the label.

29.    Consumers lack the meaningful ability to test or independently ascertain the truthfulness of product labeling at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredient label; its discovery requires investigation beyond the grocery store and knowledge of food chemistry beyond that of the average consumer.  Thus, reasonable consumers must and do rely on companies such as Defendant to honestly report the nature of a product's ingredients, and companies such as Defendant intend and know that consumers rely upon labeling statements in making their purchasing decisions.  Such reliance by

---

[1]    *See* American Botanical Council, *Herbal Dietary Supplement Retail Sales Up 7.9% in 2013, HerbalGram Herb Market Report Marks a Decade of Rising Sales*, Sept. 3, 2014 (available at: http://cms.herbalgram.org/press/2014/2013_Herb_Market_Report.html?ts=1423515683&signature=f627c 4281d78cf20ac0334cd04991e22 (last accessed February 11, 2015)).

consumers is also eminently reasonable, since companies are prohibited from making false or misleading statements on their dietary supplement products under federal law.

30. Defendant unscrupulously capitalizes on consumers' heightened demand for health-related herbal dietary supplement products by deceptively labeling, advertising, and marketing the Product.

## DAMAGES TO PLAINTIFF AND THE CLASSES

31. Plaintiff purchased the Product based on Defendant's labeling, advertising, and marketing that the Product is an herbal dietary supplement containing Echinacea.

32. Defendant manufactured, distributed, and sold the Product, which is misbranded. Misbranded products cannot be legally manufactured, distributed, sold, or held, and have no economic value and are legally worthless as a matter of law.

33. Moreover, the Product does not and cannot provide the intended health-related benefit because it does not contain the labeled ingredient, Echinacea, and thus is worthless.

## TOLLING OF THE STATUTE OF LIMITATIONS, FRAUDULENT CONCEALMENT, EQUITABLE TOLLING, AND CONTINUING VIOLATIONS

34. Plaintiff did not discover and could not have discovered through the exercise of reasonable diligence the existence of the claims sued upon herein until immediately prior to commencing this civil action.

35. Any applicable statutes of limitation have been tolled by Defendant's affirmative acts of fraudulent concealment and continuing misrepresentations, as the facts alleged above reveal.

36. Because of the self‑concealing nature of Defendant's actions and its affirmative acts of concealment, Plaintiff and the Classes assert the tolling of any applicable statutes of limitations affecting the claims raised herein.

37. Defendant continues to engage in the deceptive practice, and consequently, unwary consumers are injured on a daily basis by Defendant's unlawful conduct. Therefore, Plaintiff and the Classes submit that each instance that Defendant engaged in the conduct complained of herein

and each instance that a member of any Class purchased the Product constitutes part of a continuing violation and operates to toll the statutes of limitation in this action.

38.     Defendant is estopped from relying on any statute of limitations defense because of its unfair or deceptive conduct.

39.     Defendant's conduct was and is, by its nature, self‑concealing. Still, Defendant, through a series of affirmative acts or omissions, suppressed the dissemination of truthful information regarding its illegal conduct, and actively has foreclosed Plaintiff and the Classes from learning of its illegal, unfair, and/or deceptive acts. These affirmative acts included concealing that the Product does not contain the labeled ingredient, Echinacea, and contains other ingredients not identified on the label.

40.     By reason of the foregoing, the claims of Plaintiff and the Classes are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## CLASS ACTION ALLEGATIONS

41.     Plaintiff brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of herself and the Classes defined as follows:

**NATIONWIDE CLASS:**

All persons in the United States who purchased the Product during the applicable statute of limitations period for personal or household use, and not for resale or distribution purposes. Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

**NEW YORK CLASS:**

All consumers in New York who purchased the Product during the applicable statute of limitations period for personal or household use, and not for resale or distribution purposes. Specifically excluded from this Class are Defendant; the officers, directors, or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir, or assign of Defendant. Also excluded are those who assert claims for personal injury as well as any federal, state, or local governmental entities, any judicial officer presiding

over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

42. Plaintiff also brings this action individually and as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all persons located within his/her respective home state of New York and on behalf of all persons located within the states with similar consumer protection laws, breach of express warranty laws and breach of implied warranty laws.

43. The Classes are sufficiently numerous, as each includes thousands of persons who have purchased the Product. Thus, joinder of such persons in a single action or bringing all members of the Classes before the Court is impracticable for purposes of Rule 23(a)(1). The question is one of a general or common interest of many persons and it is impractical to bring them all before the Court. The disposition of the claims of the members of the Classes in this class action will substantially benefit both the parties and the Court.

44. There are questions of law and fact common to each Class for purposes of Rule 23(a)(2), including whether Defendant's labels and packaging include uniform misrepresentations that misled Plaintiff and the other members of the Classes to believe the Product is a dietary supplement that contains the labeled ingredient having specific health-related attributes. The members of each Class were and are similarly affected by having purchased the Product for the intended and foreseeable purpose as promoted, marketed, advertised, packaged, and labeled by Defendant as set forth in detail herein, and the relief sought herein is for the benefit of Plaintiff and other members of the Classes. Thus, there is a well-defined community of interest in the questions of law and fact involved in this action and affecting the parties.

45. Plaintiff asserts claims that are typical of the claims of each respective Class for purposes of Rule 23(a)(3). Plaintiff and all members of each respective Class have been subjected to the same wrongful conduct because they have purchased the Product, which does not contain the labeled ingredient, Echinacea. Plaintiff and the members of each Class have thus all overpaid for the Product, which is worthless because it does not contain Echinacea.

46.    Plaintiff will fairly and adequately represent and protect the interests of the other members of each respective Class for purposes of Rule 23(a)(4).  Plaintiff has no interests antagonistic to those of other members of each respective Class.  Plaintiff is committed to the vigorous prosecution of this action and has retained counsel experienced in litigation of this nature to represent her.  Plaintiff anticipates no difficulty in the management of this litigation as a class action.

47.    Class certification is appropriate under Rule 23(b)(2) because Defendant has acted on grounds that apply generally to each Class, so that final injunctive relief or corresponding declaratory relief, is appropriate respecting each Class as a whole.  Defendant made uniform misrepresentations on the labels of the Product that misled Plaintiff and the other members of each Class.

48.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of each Class.  Among these common questions of law and fact are:

a.    whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling, and sale of the Product;

b.    whether Defendant's labeling of the Product is likely to deceive the members of each Class;

c.    whether Defendant represented that the Product has characteristics, benefits, uses, or qualities that it does not have;

d.    whether Defendant's acts and practices in connection with the promotion, marketing, advertising, packaging, labeling, distribution, and sale of the Product violated the laws alleged herein;

e.    whether Plaintiff and members of the Classes are entitled to injunctive and other equitable relief; and

f.    whether Defendant was unjustly enriched by its conduct.

49.     Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the members of each respective Class.  Similar or identical statutory and common law violations and deceptive business practices are involved.  Individual questions, if any, pale by comparison to the numerous common questions that predominate.

50.     The injuries sustained by Plaintiff and the members of each Class flow, in each instance, from a common nucleus of operative facts – Defendant's misconduct.

51.     Plaintiff and the members of each Class have been damaged by Defendant's misconduct.  The members of each Class have paid for a product that would not have been purchased in the absence of Defendant's deceptive scheme.

52.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Members of each Class have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.  Because of the nature of the individual claims of the members of each Class, few, if any, could or would otherwise afford to seek legal redress against Defendant for the wrongs complained of herein, and a representative class action is therefore the appropriate, superior method of proceeding and essential to the interests of justice insofar as the resolution of claims of the members of each Class is concerned.  Absent a representative class action, members of each Class would continue to suffer losses for which they would have no remedy, and Defendant would unjustly retain the proceeds of its ill-gotten gains.  Even if separate actions could be brought by individual members of each Class, the resulting multiplicity of lawsuits would cause undue hardship, burden, and expense for the Court and the litigants, as well as create a risk of inconsistent rulings, which might be dispositive of the interests of the other members of each Class who are not parties to the adjudications and/or may substantially impede their ability to protect their interests.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Unjust Enrichment on Behalf of the Nationwide Class

53.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

54.     Plaintiff brings this claim individually, as well as on behalf of members of the nationwide Class under Illinois law.  Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.  Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn, Illinois law applies to the claims of the Class.

55.     At all times relevant hereto, Defendant deceptively labeled, marketed, advertised, and sold the Product to Plaintiff and the Class.

56.     Plaintiff and members of the Class conferred upon Defendant non-gratuitous payments for the Product that they would not have due to Defendant's deceptive labeling, advertising, and marketing.  Defendant accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, as a result of Defendant's deception, Plaintiff and members of the Class were not receiving a product of the quality, nature, fitness, or value that had been represented by Defendant and reasonable consumers would have expected.

57.     Defendant has been unjustly enriched in retaining the revenues derived from purchases of the Product by Plaintiff and members of the Class, which retention under these circumstances is unjust and inequitable because Defendant misrepresented that the Product

contains the labeled ingredient Echinacea, which caused injuries to Plaintiff and members of the Class because they did not get what they paid for.

58.     Retaining the non-gratuitous benefits conferred upon Defendant by Plaintiff and members of the Class under these circumstances made Defendant's retention of the non-gratuitous benefits unjust and inequitable. Thus, Defendant must pay restitution to Plaintiff and members of the Class for its unjust enrichment, as ordered by the Court.

**SECOND CLAIM FOR RELIEF**
**Violation of New York General Business Law §349 on Behalf of the New York Class**

59.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

60.     Plaintiff brings this claim individually and on behalf of members of the New York Class under New York law.

61.     Plaintiff and the New York Class bring their statutory claims pursuant to N.Y. Gen. Bus. Law §349, et seq., which was enacted and designed to protect consumers against misleading and deceptive business practices.

62.     Plaintiff and the New York Class are "persons" within the meaning of GBL §349(h).

63.     GBL §349 provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

64.     Defendant's marketing, advertising, and labeling of the Product as containing the labeled ingredient Echinacea is an act or practice in the conduct of trade or commerce.

65.     The marketing, advertising, and labeling of dietary supplements, such as the Product, as having the labeled ingredient Echinacea, which the Product does not have and thus cannot provide the health-related benefits attributable to that labeled ingredient, impacts the public interest.

66.     As is detailed above, Defendant's marketing, advertising, and labeling of the Product is deceptive because Defendant states that the Product has Echinacea, which the Product

14

does not have, and because Defendant failed to indicate that the Product contains other ingredients that are not identified on the label.

67.     By engaging in the conduct alleged in this Complaint, Defendant engaged in misleading and deceptive acts and practices in that its conduct had a tendency and likelihood to, and did in fact, deceive Plaintiff and the New York Class, the persons to whom such conduct was and is targeted.

68.     Defendant's misleading and deceptive acts and practices adversely impacted Plaintiff and the New York Class, who are consumers of dietary supplements, such as the Product, and therefore constitute consumer-oriented conduct under GBL §349 that resulted in actual and direct harm to Plaintiff and members of the New York Class.

69.     Plaintiff and members of the New York Class suffered economic injury as a direct and proximate result of Defendant's misleading and deceptive acts and practices by paying for the Product, which did not contain the labeled ingredient Echinacea and thus could not and did not provide the relevant health-related benefits attributable to that labeled ingredient, due to the false and misleading advertising, and marketing of the Product and Defendant's failure to disclose the true nature of the Product.

70.     Defendant's violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiff and the New York Class.  Absent Defendant's misleading and deceptive acts and practices, Plaintiff and New York Class members would not have purchased the Product had they known the truth – that the Product did not contain the labeled ingredient Echinacea and contained other ingredients not identified on the label.

### THIRD CLAIM FOR RELIEF
### Breach of Express Warranty

71.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

72.     Defendant's representations, as described herein, are affirmations by Defendant that the Product contains the labeled ingredient Echinacea and does not contain other ingredients

not identified on the label. Defendant's representations regarding the Product are made to Plaintiff and the members of the Class at the point of purchase and are part of the description of the goods. Those promises constituted express warranties and became part of the basis of the bargain, between Defendant on the one hand, and Plaintiff and the Class on the other.

73.     In addition, or in the alternative, Defendant made each of its above-described representations to induce Plaintiff and the Class to rely on such representations, and they each did so rely on Defendant's representations as a material factor in their decisions to purchase the Product. Plaintiff and other members of the Class would not have purchased the Product but for these representations and warranties.

74.     The Product did not, in fact, meet the representations Defendant made about the Product, as described herein.

75.     At all times relevant to this action, Defendant falsely represented that the Product contained the labeled ingredient Echinacea, when in fact the Product does not contain the labeled ingredient, and that the Product did not contain any ingredients other than those identified on the label, when in fact that Product does contain other ingredients not identified on the label.

76.     At all times relevant to this action, Defendant made false representations in breach of the express warranties and in violation of state express warranty laws and/or the UCC.

77.     Plaintiff and the members of the Class purchased the Product directly from Defendant, satisfying any privity requirement.

78.     As a proximate result of this breach of warranty by Defendant, Plaintiff and other members of the Class have been damaged in an amount to be determined at trial because the Product did not have the composition, attributes, characteristics, nutritional value, health qualities, or value promised.

79.     Concurrently with the filing of this Complaint, Plaintiff will make a demand upon Defendant to change its practices and refund the loss experienced by the Class. Moreover, Defendant had actual knowledge that the Product did not contain the labeled ingredients and thus

did not comply with the Product's warranties and Plaintiff therefore was not required to notify Defendant of its breach.

80.     Wherefore, Plaintiff and the Class demand judgment against Defendant for compensatory damages, plus interest, costs, and such additional relief as the Court may deem appropriate or to which Plaintiff and the Class may be entitled.

## FOURTH CLAIM FOR RELIEF
### Breach of Implied Warranties

81.     Plaintiff realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, plead this cause of action in the alternative.

82.     As the developer, manufacturer, producer, advertiser, marketer, seller and/or distributor of the Product, Defendant is a "merchant" within the meaning of implied warranty law.

83.     The Product can be classified as "goods" within the meaning of implied warranty law.

84.     Plaintiff and the members of the Class purchased the Product directly from Defendant, satisfying any privity requirement under implied warranty law.

85.     The Uniform Commercial Code §2-314 provides that unless excluded or modified, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.  This implied warranty of merchantability acts as a guarantee by the seller that his goods are fit for the ordinary purposes for which they are to be used.

86.     At the time that Defendant developed, manufactured, sold, and/or distributed the Product, Defendant knew the purpose for which the Product was intended and impliedly warranted that the Product was of merchantable quality – that is, that the Product is legal and can be lawfully sold and possessed.

87.     Defendant reasonably knew or should have known that the Product is adulterated and misbranded, and thus was unlawful for sale and economically worthless.

88.     No reasonable consumer would knowingly purchase a product that is illegal to own or possess.

89.     The Product also was unfit for the ordinary purpose for which it was intended.

90.     Thus, Plaintiff and the Class were injured through their purchase of the Product, which was unsuitable, useless, illegal, unsellable, and worthless.

91.     The Uniform Commercial Code §2-315 provides that unless excluded or modified, a warranty that the goods shall be fit for a particular purpose is implied in a contract for their sale if the seller has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods.

92.     Defendant developed, manufactured, advertised, marketed, sold, and/or distributed the Product and represented that the Product were fit for a particular use, specifically that the Product could be used as a dietary supplement to obtain the benefits attributed to the labeled ingredient Echinacea and that the Product does not contain any ingredients other than those identified on the label.  Contrary to such representations, Defendant failed to disclose that the Product does not contain the labeled ingredient Echinacea, as promised, and, in fact, does contain other ingredients not identified on the label.

93.     Further, Defendant is a merchant with respect to the Product.  Defendant developed, manufactured, produced, advertised, marketed, sold, and/or distributed the Product and represented to Plaintiff and the Class that it developed the Product as a dietary supplement that contains the labeled ingredient Echinacea in order to attain the benefits attributed to that labeled ingredient.  Further, Defendant, by selling the Product to Plaintiff and the Class has held itself out as a retailer of the Product that could be used as a dietary supplement that contains the labeled ingredient Echinacea in order to attain the benefits attributed to that labeled ingredient and, in fact, has derived a substantial amount of revenues from the sale of the Product.

94.     As a merchant of the Product, Defendant knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute a product that could be used as a dietary supplement that contains the labeled ingredient Echinacea in order to attain the benefits attributed

to that labeled ingredient, as promised. Moreover, Defendant knew that purchasers relied upon them to develop, manufacture, produce, sell, and distribute a product that could be used as a dietary supplement that does not contain any ingredients other than those identified on the label.

95. Defendant developed, manufactured, produced, sold, and distributed the Product to consumers such as Plaintiff and the Class. It knew that the Product would be used as a dietary supplement that contains the labeled ingredient Echinacea in order to attain the benefits attributed to that labeled ingredient, as promised, and that does not contain any ingredients other than those identified on the label.

96. Defendant specifically represented in its labeling of the Product that it is a dietary supplement that contains the labeled ingredient Echinacea, as described herein. Defendant also represented that the Product does not contain any ingredients other than those identified on the label.

97. Defendant breached its implied warranties in connection with the sale of the Product to Plaintiff and members of the Class. The Product was not fit for its ordinary purposes and/or for its particular purpose as a dietary supplement that contains the labeled ingredient Echinacea in order to attain the benefits attributed to that labeled ingredient, because the Product does not contain the labeled ingredient and contains ingredients other than those identified on the label.

98. Concurrently with the filing of this Complaint, Plaintiff will make a demand upon Defendant to change its practices and refund the loss experienced by the Class. Moreover, Defendant had actual knowledge that the Product did not contain the labeled ingredients and thus was not fit for its ordinary purpose and Plaintiff therefore was not required to notify Defendant of its breach.

99. As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff and other members of the Class have been injured. Plaintiff and the other members of the Class would not have purchased the Product but for Defendant's representations and warranties. Defendant misrepresented the character of the Product, which caused injuries to Plaintiff and the

other members of the Class because they purchased products that were not of a character and fitness as promised and therefore had no value to Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief against Defendant as follows:

A.       that the Court certify the nationwide Class and the New York Class under Rule 23 of the Federal Rules of Civil Procedure and appoint Plaintiff as Class Representative and her attorneys as Class Counsel to represent the members of the Classes;

B.       that the Court declare that Defendant's conduct violates the statutes referenced herein;

C.       that the Court preliminarily and permanently enjoin Defendant from conducting its business through the deceptive business acts or practices, untrue and misleading labeling and marketing and other violations of law described in this Complaint;

D.       that the Court order Defendant to conduct a corrective advertising and information campaign advising consumers that the Product does not have the characteristics, uses, benefits, and quality Defendant has claimed;

E.       that the Court order Defendant to implement whatever measures are necessary to remedy the deceptive business acts or practices, untrue and misleading advertising, and other violations of law described in this Complaint;

F.       that the Court order Defendant to notify each and every individual and/or business who purchased the Product of the pendency of the claims in this action in order to give such individuals and businesses an opportunity to obtain restitution from Defendant;

G.       that the Court order Defendant to pay restitution to restore to all affected persons all funds acquired by means of any act or practice declared by this Court to be a deceptive business act or practice, untrue or misleading labeling, advertising, and marketing, plus pre- and post-judgment interest thereon;

H.     that the Court order Defendant to disgorge all monies wrongfully obtained and all revenues and profits derived by Defendant as a result of its acts or practices as alleged in this Complaint;

I.     that the Court award damages to Plaintiff and the Classes;

J.     that the Court grant Plaintiff her reasonable attorneys' fees and costs of suit pursuant to the common fund doctrine, and/or any other appropriate legal theory; and

K.     that the Court grant such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all causes of action so triable.

DATED:  February 11, 2015     **CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP**

_____

Dom J. Rizzi
30 North LaSalle Street
Suite 3200
Chicago, Il 60602
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
E-mail: drizzi@caffertyclobes.com

Joseph P. Guglielmo
Erin Green Comite
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
E-mail:  jguglielmo@scott-scott.com
E-mail:  ecomite@scott-scott.com

*Counsel for Plaintiff*